Estate of John Wanamaker, Jr., Elizabeth Peltz Hamilton as administratrix C.T.A. v. Commissioner.
Estate of Wanamaker v. Commissioner
Docket No. 106092.
United States Tax Court
1943 Tax Ct. Memo LEXIS 392; 1 T.C.M. (CCH) 809; T.C.M. (RIA) 43140; March 23, 1943
*392 Where grantor transferred his remainder interest in certain property to a trust and in no eventuality, other than the failure of the trust, could such interest revert to the estate of the grantor, held that the transfer was neither (1) a transfer intended to take effect in possession or enjoyment at or after his death, nor (2) a substitute for a testamentary disposition of such interest. Where property appointed in the exercise of a general power of appointment does not pass, under local law, by reason of exercise of the power but passes under the instrument granting the power, the value of such property is not required to be included in the gross state of the donee of the power for ascertaining property subject to estate tax. Revenue Act of 1926, section 302(f) as amended by section 803 (b) of the Revenue Act of 1932. Maurice Bower Saul, Esq., Joseph A. Lamorelle, Esq., Chester J. McGuire, Esq., Robert C. Walker, Esq., and Stephen T. Dean, Esq., for the petitioner. Eugene G. Smith, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $120,330.25 in estate tax. Two issues are presented for determination, namely, (1) whether *393 a transfer by the decedent, John Wanamaker, Jr., made during his lifetime, of a remainder interest in one-third of a trust fund, was intended to take effect in possession or enjoyment at or after the death of the decedent; and (2) whether a remainder interest of decedent's children in a trust fund passed to them by virture of the exercise by the decedent of a general power of appointment or whether it passed to them under the instrument conferring the power of appointment upon the decedent. In the event of an affirmative answer to the first issue, there is presented for determination the further question of the value of the remainder interest involved in that issue at the date of the death of the decedent. Other issues were raised by the amended petition, but they are eliminated from our consideration by stipulation of the parties. The parties now agree that an adjusted war service certificate of the face value of $1,430 should be included in the gross estate; that personal property of the value of $42,738.53 and real property of the value of $11,666.67 should be excluded therefrom; and that the estate should be allowed an additional deduction of $6,000 for attorney fees. Effect *394 will be given to this agreement in the redetermination under Rule 50. Many of the facts have been presented upon several stipulations, and we adopt the facts stipulated as our findings of fact herein. In the findings which follow we set forth those facts contained in the stipulations and the accompanying exhibits which we deem necessary for consideration of the contested issues, together with those found from the evidence introduced at the hearing. Findings of Fact John Wanamaker, Jr., sometimes hereinafter referred to as the decedent, died testate on November 29, 1934, a resident of Reno, Nevada. Elizabeth Peltz Hamilton, the petitioner herein, is the administratrix c.t.a. of the estate of the decedent, under letters issued March 18, 1935 by the Second Judicial District Court of the State of Nevada in and for the County of Washoe. The petitioner is also the ancillary administratrix c.t.a. of said estate in the State of New York, under letters issued June 5, 1935, by the Surrogate's Court of New York, County of New York. The petitioner filed the federal estate tax return for the estate of the decedent with the collector for the Second District of New York on October 15, 1937. The *395 decedent was the son of Rodman Wanamaker, who died testate on March 9, 1928, leaving as his sole surviving heirs at law and next of kin three children, - the decedent and two daughters, Fernanda W. Heeren (now Fernanda W. Munn) and Marie Louise Munn. Rodman Wanamaker was a resident of Pennsylvania at the time of his death, and his last will and testament, dated October 6, 1923, and three codicils thereto, were probated in the Office of the Register of Wills in and for the County of Montgomery, State of Pennsylvania, on December 20, 1928. At the time of his death Rodman Wanamaker owned, among other property, all of the capital stock of the corporation John Wanamaker Philadelphia, which stock is hereinafter referred to as the Wanamaker stock. In his will Rodman Wanamaker provided that the Wanamaker stock should be held in trust by trustees named by him, and that the annual income therefrom, except a prescribed portion which was to be used for other purposes, should be paid in equal amounts to his three children, above named, during their respective lives, subject to a spendthrift provision. He further provided that, upon the death of each of his said children, the income which such *396 deceased child would have received if living should be divided into two equal parts, and that one part should thereafter be paid to the child or children of such deceased child, and that the other part should thereafter be accumulated for the purpose of raising a principal fund of $2,000,000, to be used in the interest of a charity to be created and to be known as the "John Wanamaker Free School of Artisans". Paragraph Eighth of the will provides as follows: EIGHTH. In further Trust, on the part of my said Trustees, to hold said Capital Stock, and all dividends, income or money derived therefrom, subject to the provisions herein previously contained, for the benefit of all the child, or children, of all the children of my three (3) children, for and during the term of their natural life, or lives, of such of my said grandchildren, and for the period of twenty-one (21) years after the date of the decease of the last surviving grandchild. In further Trust, at the expiration of the period of twenty-one (21) years, after the date of the decease of the last surviving grandchild, of my children, then said stock or the proceeds which may be derived therefrom, to be equally divided, share *397 and share alike, into as many parts as there may then be great-grandchildren of mine, surviving, and the descendant of any great-grand-child, then surviving, the latter to receive and enjoy, subject to the provisions heretofore stated such share as their parent, or parents, would have enjoyed, had they then not been deceased. By a codicil to his will, dated August 5, 1927, Rodman Wanamaker provided for the payment of a yearly annuity of the $20,000 to each of his five grandchildren then living, namely, Rodman Arturo Heeren (son of Fernanda W. Munn); John Rodman Wanamaker, and Fernanda Pauline Wanamaker (son and daughter, respectively, of the decedent John Wanamaker, Jr.); and Gurnee Munn, Jr. and Fernanda Munn (son and daughter, respectively, of Marie Louise Munn); and for the payment of a yearly annuity of $20,000 to his nephew Rodman Wanamaker, 2nd, and a yearly annuity of $100,000 to his sister Mary Brown Warburton. The will of Rodman Wanamaker, in addition to providing for the trust of the Wanamaker stock, provided for two other trusts, the provisions of which are not here material. Soon after the death of Rodman Wanamaker, and on June 11, 1928, his three children entered into *398 an agreement with the executors of his estate and with the trustees of the three trusts provided for by the will of Rodman Wanamaker by which agreement the three children transferred all their right, title, and interest in the Wanamaker stock to the trustees of that stock under the will of Rodman Wanamaker. The said agreement recites: that "there is some doubt as to when the [three] trusts * * * terminate; it being alleged that the provisions of the Will and Codicils violate the Rule against Perpetuities;" that the three children of Rodman Wanamaker are the sole heirs and next of kin of the said Rodman Wanamaker; and that "it is the desire of all parties that the time for distribution shall, by this agreement, be definitely fixed and agreed to, and that the provisions of the said Will and Codicils * * * be confirmed, fixed and determined as herein set forth" and, with respect to those portions of the will and codicils relating to the Wanamaker stock, the agreement further provided as follows: 2. In consideration of the execution of this agreement by the other children, each child of Rodman Wanamaker, Deceased, viz, Fernanda W. Munn, John Wanamaker, Jr., and Marie Louise Munn, agrees *399 that the period for distribution of the Principal of the Trust of the Capital Stock of John Wanamaker Philadelphia, * * * shall be twenty-one (21) years after the death of the last survivor of Mary Brown Warburton, Rodman Wanamaker, 2nd, Fernanda W. Munn, John Wanamaker, Jr., Marie Louise Munn, and such grandchildren of Rodman Wanamaker as may have been living at the time of his death, at which time the principal of said Trust shall be distributed to and among the descendants of Rodman Wanamaker then living, in equal shares, per stirpes, upon the principle of representation. * * * * *
6. In consideration of the premises, Fernanda W. Munn, John Wanamaker, Jr., and Marie Louise Munn, and each of them, agree to convey, assign, transfer and set over, and by these Presents do hereby convey, assign, transfer and set over, unto William L. Nevin, [and the other trustees named] Trustees under the Will of Rodman Wanamaker, Deceased, all of their right, title, interest, claim and demand, in and to the Capital Stock of John Wanamaker Philadelphia. In Trust, nevertheless, for the same uses, purposes and trusts, with the same powers and discretion in the Trustees, and with the same limitations *400 and remainders, as are set forth in the last Will and Testament of Rodman Wanamaker, Deceased, and Codicils thereto, except that the period for final distribution of said Capital Stock of John Wanamaker Philadelphia shall be twenty-one (21) years after the death of the last survivor of Mary Brown Warburton, Rodman Wanamaker, 2nd, Fernanda W. Munn, John Wanamaker, Jr., Marie Louise Munn, and such grandchildren of Rodman Wanamaker as may have been living at the time of his death, when the said Trust Fund shall be distributed to and among the descendants of Rodman Wanamaker then living, in equal shares, per stirpes, upon the principle of representation. * * * * *
9. Anything herein contained to the contrary notwithstanding, it is understood and agreed by Fernanda W. Munn, John Wanamaker, Jr., and Marie Louise Munn, that should any of the provisions of the Will and Codicils of Rodman Wanamaker be void or be declared to be void under the laws of any State of the United States, in whole or in part, or as to any specific part of said estate, this agreement and the trusts hereby created shall, nevertheless, be valid. 10. This agreement shall be construed as an Indenture of Trust inter *401 vivos under the laws of the State of Pennsylvania where this instrument is to be performed. Under the provisions of the codicil of August 5, 1927, as supplemented by a certain agreement of settlement between the parties in interest, dated January 26, 1931, and approved by decree of the Orphans' Court of Montgomery County, Pennsylvania onmay 13, 1931, annuities are payable to each of the five grandchildren of Rodman Wanamaker above named and to Rodman Wanamaker, 2nd, in the amount of $20,000 each, and to Mary Brown Warburton in the amount of $100,000, during the respective lives of the said annuitants, out of the trust fund created by the will of Rodman Wanamaker, consisting of the Wanamaker stock. On June 19, 1939, the Supreme Court of Pennsylvania filed an opinion and decree in the Estate of Rodman Wanamaker, deceased, in an appeal from a decree entered by the Orphans' Court of Montgomery County in a proceeding questioning the validity of the trust of the Wanamaker stock created by the will of Rodman Wanamaker. The opinion and decree is reported in volume 355, Pa. State Reports 241. The Supreme Court interpreted the will as deferring the vesting of the remainder interests until *402 21 years after the date of the death of the last survivor of the grandchildren of Rodman Wanamaker as a class, irrespective of whether or not the grandchildren were living at his death, and it held that, although the will created ultimate remainders in violation of the rule against perpetuities and the remainders disposing of the corpus were illegal and void, the trust was valid "at least during the continuance of the life estates of the three children of the testator, now the two surviving children, Fernanda W. Munn and Marie Louise Munn, and during the lives of the grandchildren (because any grandchild would have to be born before the death of its mother) and Mary Brown Warburton and Rodman Wanamaker, 2nd;" and it held further, that the valid portions of the trust should be maintained. At the time of the death of the decedent John Wanamaker, Jr. on November 29, 1934, the two daughters, the five grandchildren, the sister, and the nephew of Rodman Wanamaker, all of whom are hereinbefore mentioned, were living, and they were living at the time of the hearing of this proceeding. The date of birth of each of the said persons is as follows: Fernanda W. Munn, December 9, 1887; Marie Louise *403 Munn, August 8, 1895; Rodman Arturo Heeren, August 1, 1910; Gurnee Munn, Jr., August 21, 1917; Fernanda Munn, August 26, 1920; John Rodman Wanamaker, July 15, 1918; Fernanda Pauline Wanamaker, June 25, 1922; Mary Brown Warburton, May 5, 1871; Rodman Wanamaker, 2nd, October 10, 1899. At the time of the death of the decedent John Wanamaker, Jr., on November 29, 1934, the Wanamaker stock had a value of $36,283,878. The entire fund of $2,000,000 which was directed by the will of Rodman Wanamaker to be accumulated, as therein stated, in the interest of the John Wanamaker Free School of Artisans has not been accumulated. The amount actually accumulated in the said fund, up to and including May 7, 1942, was $344,229.78. In determining the deficiency in estate tax the respondent included the amount of $735,353.26 in the gross estate of the decedent John Wanamaker, Jr., as the value of the "remainder interest in onethird of trust under will of Rodman Wanamaker and agreement of June 11, 1928, subject to various life estates." By an indenture dated June 2, 1903, Rodman Wanamaker, then a resident of the State of Pennsylvania, created a trust hereinafter referred to as the trust of 1903, wherein *404 he provided that the income therefrom should be accumulated during his life unless he in writing should otherwise direct, and that, after his death, one-third of the income should be paid to each of his three children, John Wanamaker, Jr., Fernanda W. Wanamaker (now Fernanda W. Munn), and Marie Louise Wanamaker (now Marie Louise Munn), as and when they attained certain ages. The trust of 1903 further provided: * * * and at the decease of each of the said children surviving the said L. Rodman Wanamaker, to pay one full equal one-third part or share of the principal and interest of the said fund then in the hands of the said [trustees] to such person or persons and in such manner as he or she by last will or other testamentary writing, shall direct, limit and appoint, and in default of such appointment, then to his or her children in equal shares; and in default of children and without having exercised the power of appointment, then to the heirs of such child under the intestate laws of Pennsylvania; By a testamentary writing dated May 13, 1931, which was probated as a part of his will, John Wanamaker, Jr., the decedent herein, exercised the power of appointment given him by the trust *405 of 1903. He appointed the sum of $105,000 as follows: To Eleanor C. Goodfellow, $25,000; to Joseph Ketchel, $5,000; to Alfred Damp, $2,500; to Louis Caraby, $10,000; to James Quinn, $2,500; and to Herman Schmidt, $10,000, subject to the condition that, if any such appointee was not in John Wanamaker, Jr.'s employ at the time of his death, such appointee's legacy should fall into and become part of the residue of John Wanamaker, Jr.'s estate; and to William J. McMichael, $50,000 absolutely. The decedent appointed the residue of the property over which he had power of appointment under the trust of 1903 to the Pennsylvania Company for Insurances on Lives and Granting Annuities and G.D.M. Peltz, hereinafter referred to as the "Trustees", in trust, to pay the net income therefrom to Elizabeth Peltz Warburton, (later Elizabeth Peltz Wanamaker, widow of the decedent, and now Elizabeth Peltz Hamilton, the petitioner herein) for life, and upon her death to pay the principal and all accumulated in terest subsequent to her death to the children of the decedent, or the survivor or survivors of them, in equal shares, absolutely. After the death of the decedent, the trustees under the trust of *406 1903 filed their account in the Orphans' Court of Philadelphia County, State of Pennsylvania, and, in an adjudication dated August 27, 1935, that court awarded the property over which the decedent had power of appointment in accordance with the directions contained in the testamentary writing of May 13, 1931, except that it made no award to Joseph Ketchel or Alfred Damp, as they were not in the employ of the decedent at the time of his death. In the latter part of 1935 the property over which the decedent had power of appointment was distributed in accordance with such adjudication of the Orphans' Court of Philadelphia County and the schedule of distribution filed in accordance therewith, and there was transferred and paid over to the trustees securities and cash in the amounts set forth in the said schedule of distribution, to be held in trust for Elizabeth Peltz Hamilton for the purposes and upon the terms set forth in the testamentary writing of May 13, 1931. Elizabeth Peltz Hamilton, who is entitled to the net income for life from the property directed to be paid to the trustees by the instrument of May 13, 1931, was born on October 24, 1905, and was 29 years of age at the time *407 of the death of the decedent on November 29, 1934. At the date of the death of the decedent on November 29, 1934, the value of all of the property over which the decedent had power of appointment under the trust of 1903 was $247,570.76. The value at that date of the portion of the said property which was paid outright to Eleanore C. Goodfellow and other individuals, as directed by the instrument of May 13, 1931, was $97,500. The value at that date of the life interest of Elizabeth Peltz Hamilton in the portion of the said property which was directed to be paid to the trustees by the instrument of May 13, 1931, was not in excess of $105,063.04; and the value at that date of the remainder interest in such portion of said property, which remainder interest is payable to the children of the decedent, or the survivors or survivor of them, was $45,007.72. In determining the deficiency in estate tax the respondent included the amount of $247,570.76 in the gross estate of the decedent as the value of the property passing under power of appointment. Opinion TYSON, Judge: The principal question for determination is whether the value of his one-third remainder interest in the Wanamaker stock *408 which the decedent transferred by the agreement of June 11, 1928, should be included in his gross estate under section 302 (c) of the Revenue Act of 1926, as amended. [1] If the question be answered in the affirmative, there is also presented the question whether the respondent's valuation of such interest at $735,353.26 is proper. The will of Rodman Wanamaker provided for specific life annuities, for life estates for his children and grandchildren, and for the accumulation of part of the trust income for charity. All of these provisions were valid, but the remainders over his great-grandchildren were void as violating the rule against perpetuities. In . The remainders, therefore, passed to the three children of Rodman Wanamaker under the intestate *409 laws of Pennsylvania. Prior to the construction of the will by the Supreme Court of Pennsylvania, and for the purpose of eliminating the provisions of the trust which were thought to be invalid, and which were afterwards decided to be so in the above cited case, the three children of Rodman Wanamaker executed the agreement of June 11, 1928. By that agreement the three children transferred their entire interest in the Wanamaker stock to the trustees appointed by the will, subject to the same uses and trusts and with the same limitations and remainders set forth in the will, except that, in lieu of the provision of the will for termination of the trust 21 years after the death of the last surviving grandchild of Rodman Wanamaker and for distribution at that time of the corpus to great-grandchildren, they agreed that the trust should terminate 21 years after the death of the last survivor of a designated group composed of the three children of Rodman Wanamaker, including John Wanamaker, Jr., the five grandchildren of Rodman Wanamaker living at his death, and Mary Brown Warburton and Rodman Wanamaker, 2nd, and that, at that time, the corpus should be distributed to the descendants of *410 Rodman Wanamaker who were then living, in equal shares, per stirpes, upon the principle of representation. The respondent seeks to sustain the tax upon two grounds. The first is that there was a possibility that John Wanamaker, Jr.'s one-third remainder interest in the Wanamaker stock would revert to his estate, and that, under the rule of , the agreement must be held to have effected a transfer which was intended to take effect in possession or enjoyment at or after the death of the decedent; and the second is that, irrespective of whether or not there was a possibility of the decedent's regaining the property prior to his death, the transfer is taxable because it was a substitute for a testamentary disposition and was literally intended to take effect in possession or enjoyment at or after the decedent's death. [2]
*411 The petitioner contends that the instant case is controlled by , and that the facts herein are even more favorable to her since the decedent did not even retain a possibility of reverter insofar as the income was concerned. She further contends that if the May case is no longer to be followed in view of the Hallock decision, the transfer here involved should not be taxed for the reason that the transfer can not be said to have been intended by the decedent to take effect in possession or enjoyment at or after his death, since the decedent inherited and did not create the remainder interest, and the taking effect in possession or enjoyment after his death was an incident of and a limitation upon his ownership before the transfer. It is unnecessary here to discuss at length the effect of the Hallock decision upon the May case. Our position on this question is set forth in , wherein, after full consideration, we declared our intention to follow the May case until the Supreme Court holds that it is no longer authority. In reaching our *412 conclusion in the Bradley case, we relied upon numerous court decisions, among them being Brown et al., Executors v. United States (unreported). Since rendition of our opinion in the Bradley case the Circuit Court of Appeals for the Ninth Circuit, in affirming the Brown case, observed that "the current of decisions has doubtless encompassed May v. Heiner, but we are in no position to hold that the time has overturned it." . Our problem, therefore, is to determine whether the Hallock case or the May case is applicable to the facts of the present case. In the Hallock case the trust there involved provided for the return or the reversion of the corpus of the trust to the grantor upon a contingency terminable at his death, and the court held that the transfer of the corpus to the trust by the grantor was so incomplete when made and the grantor retained such an interest in the corpus so transferred that the cessation of that interest at his death furnished the occasion for imposing the tax. There was no provision in the trust agreement we are here considering, as was *413 in the Hallock case, for reversion of the corpus to the children of Rodman Wanamaker, or either of them including the decedent, as grantors of the trust upon a contingency terminable at their respective deaths. In the May case, the grantor gave the income to her husband for life, then to herself for life, and after her decease the corpus was to be distributed equally among her four children. The court held that at the death of the grantor no interest in the property held under the trust deed would pass from her to the living and that the transfer was not one intended to take effect in possession or enjoyment at or after the grantor's death. The present case differs from the May case in that the trust property here involved was subject to life estates created by the will of Rodman Wanamaker, and not by the grantor decedent (and in this respect is perhaps more favorable to the taxpayer here than was the fact that the life estates were created by the grantor taxpayer in the May case); but insofar as the gift of the corpus or remainder is concerned the transfer here was as absolute and complete as was the gift of Mrs. May to her children in the May case. The remainder *414 interest here was transferred absolutely and irrevocably to the trustees, to be distributed to the descendants of Rodman Wanamaker living at the death of the last survivor of a designated group of persons including the decedent. The respondent makes no contention that there was a possibility of the remainders ever passing to either of the three children, including the decedent. Such a contention, if made, would be obviously untenable, for the reason that the remainders were so limited that they fell in only after the death of the last survivor of a designated group, including the three children. But the respondent contends that it was possible that each of the life tenants might die childless and that in the event of the happening of such a contingency the remainders would revert to the estates of the three children of Rodman Wanamaker including this decedent. However, upon the happening of the suggested contingency the remainders would so revert not by virtue of any provision contained in the trust instrument, but because of a failure of the trust, and the doctrine of the Hallock case, it has been held, does not apply in such a situation. ; *415 Cf. . Here there could be no possible happening of a contingency by which the interest of decedent in the remainder in question would pass to his estate, except through failure of the trust. The Kellogg case not only provides a complete answer to the contention of the respondent with regard to the applicability of the Hallock decision, but it also disposes of his further contention that the transfer was a substitute for a testamentary disposition and was literally within the words of the statute. The trust involved in the Kellogg case reserved the income to the grantor for life, then to his wife for life, and, upon the death of the survivor, it directed that the corpus be divided among their surviving children, with one share for the surviving spouse or issue of any deceased child. It further provided that if all of the children should predecease their parents, leaving neither spouse nor issue surviving the grantor and his wife, the corpus should then pass to the surviving next of kin of the grantor according to the intestate laws of the state. The court held that the grantor had made a *416 complete disposition of his interest in the corpus during his lifetime, that the case was closer to the May case than to , and that the doctrine of the Hallock case had no application. And, with respect to the Government's claim that the transfer was a substitute for the testamentary disposition of the grantor and, in the words of the statute, was "intended to take effect in possession at or after his death," the court said: In short the petitioner relies on the exact language of the statute. His difficulty in sustaining this contention arises also with May v. Heiner and becomes insurmountable, so far as this court is concerned, when we contemplate the decision in * * * If the words of the statute just quoted are to receive the meaning contended for by the petitioner, they must receive it from the Supreme Court. See also Our decision in , is in accord with the views of the court in the Kellogg *417 case, and the argument of the respondent that the Kellogg decision is unsound is foreclosed insofar as this court is concerned. On the first issue the respondent's action in including the value of the one-third remainder interest in the estate of the decedent is reversed, and in view of our conclusion in this regard it is unnecessary to decide whether his valuation of such interest was proper. We will now consider the second issue. The decedent, under the trust of 1903, had a general power of appointment, by will or other testamentary writing, over property which, at the time of his death, had a value of $247,570.76. The respondent included the latter amount in the gross estate of the decedent, but the petitioner does not question this action insofar as the respondent included therein $105,063.04 as the value of the life interest appointed to the decedent's widow, and $97,500 as the value of the property appointed outright to other individuals. The petitioner claims that the balance of the total value, or $45,007.72, which is the admitted value of the remainder interest which, by the testamentary instrument of May 13, 1931, was appointed upon the death of the decedent's *418 widow to the children of the decedent, should be excluded from the gross estate. The question argued is whether or not such remainder interest is "property passing under a general power of appointment exercised by the decedent * * * by will," within the meaning of section 302(f) of the Revenue Act of 1926, as amended by section 803(b) of the Revenue Act of 1932. In , the decedent under a power of appointment, appointed in her will to her children a life estate in property which, by the will of the donor of the power, was bequeathed to them in fee in default of the exercise of the power of appointment by the decedent. The court held that, under the law of Pennsylvania, the life estate passed to the children under the will of the donor and not by virtue of the exercise of the power of appointment, and that, under the principle of , the value of the property appointed should not be included in the gross estate of the donee of the power. In the present case, (which likewise involves the law of Pennsylvania) the the trust of *419 1903 provided that, in default of the exercise of the power by the decedent, the entire property subject to the power should go to the children of the decedent in equal shares, and, in exercising the power in the instrument of May 13, 1931, the decedent carved from whole property the legacies given to certain individuals and the life estate given to his widow and gave the remainder interest after the death of his widow to his children, in equal shares. The case is on all fours with , and that case is decisive of the issue here presented. The respondent contends that, within the meaning of the statute, the remainder interest passed to the children of the decedent under the exercise of his power of appointment, since the tax is imposed upon the power to transmit or the transmission of property by death and the shifting of the economic benefits in property is the real subject of the tax. This is the same argument that the Government presented in the Grinnell case, and the Supreme Court there rejected it, saying that the tax does not fall upon the mere shifting of the economic benefit in the property, *420 but upon the shifting of those benefits by a particular method, namely, by their "passing under a general power of appointment", and not otherwise. The acceptance of the Government's contention, said the court, would strip the word "passing" of all meaning. The case of , has been followed in , and , all of which involved the Law of Pennsylvania. Upon the authority of those cases we hold that the remainder interests here in question, of the value of $45,007.72, should be excluded from the gross estate of the decedent. See also ; . Cf. . Decision will be entered under Rule 50.
Footnotes
1. SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * * (c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, * * *↩
2. It is not claimed that the transfer was made in contemplation of death. Nor can it now successfully be contended that it is taxable under the provisions of section 302(c) which were added by the Joint Resolution of March 3, 1931 and section 803(a) of the Revenue Act of 1932, since the transfer was made prior to March 3, 1931. See ; ; .↩